[No. 702. Decided February 24, 1893.]

JENS PEATER HANSEN, *Respondent*, v. J. H. HOFFMAN, *otherwise known as John H. Crawford, Respondent*, AND W. W. SWANK, *Appellant*.

NEGOTIABLE INSTRUMENTS — FRAUDULENT TRANSFER — BONA FIDE HOLDER.

Although one may fraudulently procure the assignment of a note and mortgage to himself and transfer them to a third person as security for a loan, yet such third person stands in the position of a *bona fide* holder for value to the extent of the money advanced on such security, when he is ignorant of the fraud, even if the character and value of the security may have been such as to arouse the suspicion of a prudent business man.

*Appeal from Superior Court, King County.*

*Preston, Albertson & Donworth*, for appellant.

*Stratton, Lewis & Gilman (A. G. McBride*, of counsel), for respondent.

The opinion of the court was delivered by

SCOTT, J.— The disposition of this case rests upon a question of fact. Respondent Hansen was the holder and owner of two negotiable promissory notes, each being for the sum of $1,200, and secured by a mortgage upon certain real estate. The defendant, then known to respondent Hansen as J. H. Hoffman, entered into an agreement with Hansen whereby they were to purchase a certain saloon in the city of Seattle, and conduct a saloon business therein as partners. The purchase price of said saloon and stock was $5,200, all of which Hoffman was to advance, and Hansen agreed to transfer to Hoffman the notes aforesaid and mortgage as security for his one-half of the purchase price. Pending these negotiations between Hoffman and Hansen, Hoffman, under the name of J. H. Crawford, was negotiating with appellant, Swank, for the purpose of ob-

taining a loan from him.    At this time he obtained from
Hansen an assignment of the notes and mortgage in ques-
tion, said assignment being a separate instrument, executed
and acknowledged by him before a notary public, and he
delivered it to Hoffman.    The notes and mortgage were
taken by Hansen, and he went with Hoffman to one Rosen-
feldt, the proprietor of the saloon which they proposed to
purchase, and there deposited said notes and mortgage in
the safe of the said Rosenfeldt, in an envelope belonging
to Hoffman.    The assignment in question had been ex-
ecuted to Hoffman as J. H. Crawford, although Hansen did
not know this, the assignment not having been read to
him.    He claims that it was fraudulently procured from
him; that he understood, and it was represented to him
to be, an agreement to enter into partnership.    Some
time after the notes and mortgage were deposited as afore-
said, Hoffman went to the saloon in question, and obtained
them from the proprietor, and took them to appellant,
Swank.    At this time the notes purported to have Han-
sen's name on the back of them.    Hoffman transferred the
notes and mortgage to Swank, and executed to him a note
for $1,260, and obtained from him $960.    Hansen denied
ever having indorsed the notes, and claimed that his name
had been forged thereon by Hoffman, and that, in conse-
quence of the assignment having been fraudulently obtained
from him, he never parted with the title to the notes and
mortgage, and that appellant Swank obtained no title or
rights thereto, even though he acted in good faith.    But
he claims that Swank acted not in good faith.    It appears
that when the notes and mortgage were taken to Swank he
noticed a difference between the signatures on the back of
the notes and the signature to the assignment, whereupon
Hoffman, or Crawford, said he would take them back, and
have them re-indorsed.    He took them with him and re-
turned in a short time, and said that Hansen had refused

to indorse them again, saying he had written his name on them once, and that was enough; but he wrote his name on a separate piece of paper, and sent that along, whereupon Swank accepted the papers. Hansen subsequently brought this action to restrain Swank from disposing of the notes and mortgage, and to obtain possession of them. He alleged that Swank obtained the same without consideration; also that he did not obtain them in good faith. It is urged that Swank had notice that Hoffman, or Crawford, rather, as he was known to him, was an unreliable person. It appears that he had previously obtained a loan from Swank for $50 with an irresponsible surety, and that Swank had threatened to prosecute him for misrepresentations connected therewith; and from that fact, and the fact that Swank's suspicions were aroused by the discrepancy in Hansen's signature upon the notes and upon the assignment, and the further fact that Swank took the mortgage without any investigation of the title to, or value of, the land covered by it, he argues and insists that Swank was not a *bona fide* holder; and this is admitted to be the turning point in the case, if Hansen actually executed the assignment of said papers as an assignment, and did not indorse the notes.

It would be useless to undertake to set forth all the testimony. Several witnesses were sworn and testified, including the notary public before whom Hansen executed the assignment; and we are satisfied from the proofs in the case that Hansen, at the time he executed the document to Hoffman, knew that he was assigning the notes and mortgage to him. After the proposed partnership arrangement fell through, he called upon Hoffman, and asked that the assignment be returned to him, he calling it "the paper." It is admitted that this document was not read to Hansen at the time he signed it, but the notary says it was explained to him. At the time he went to obtain it from

Hoffman, Hoffman opened a drawer in his desk, and, taking out a paper, said, "Here's your paper," holding it up before him, and proceeded to tear it up, and throw it into the waste basket. Hansen asked if it had been placed upon record. Hoffman told him it had not, and Hansen went away apparently satisfied. In advancing Hoffman, or Crawford, the $960, Swank was apparently making $300 out of the transaction, and as a part of said sum he returned to him the note for $50 which Crawford had previously given him. He said he did not investigate the title to the land, or its value, because he knew the parties who had purchased it of Hansen, and gave him the notes and mortgage to secure a part of the purchase price, and he was satisfied to rely upon their judgment as to the title and value. It is immaterial whether Hansen indorsed the notes or not, and we are not called upon to find as to that, as we are satisfied that he did execute the assignment, knowing substantially the effect of it. Some days after their negotiations to go into partnership had ceased, and Hansen had, as he supposed, seen the document he had executed to Crawford destroyed, he went to the saloon in question to demand his papers, and found that they had been given up to Hoffman. The proprietor of the saloon said he understood Hoffman had a right to them when they were left there, and for that reason he permitted him to take them. Hoffman was arrested, tried and convicted, and sentenced to the penitentiary for his transactions in said matters.

In this case the lower court found that Swank did not obtain the notes and mortgage in good faith, and found for plaintiff, whereupon Swank appealed to this court. In this particular we think the finding of the court was wrong. We are well satisfied from the proof that Swank actually advanced the $960, including the note for $50, to Crawford; and, although he might not have been very cautious in the matter, and took chances that perhaps a prudent

business man would not have taken without further satisfying himself of the character and value of the security, yet we do not think that Swank doubted Crawford's title to the papers in the least, nor suspected him of acting under two different names; and later, when he received information which caused him to suspect the character of Crawford, and to doubt that the transaction upon his part was all right, he caused an investigation to be set on foot. Swank would not have made this additional loan of over $900 in money had he supposed that Crawford was not the owner of the notes and mortgage, as he pretended to be. While he might have supposed that the paper was not first class, such as would pass at a bank ordinarily, doubtless he was willing to take some chances in this regard in order to secure the bonus of $300, and security for the $50 he had previously loaned to Crawford.   Before the transaction was closed between Swank and Crawford he caused Crawford to go with him to see his attorney, and the whole matter was submitted to such attorney, and his advice taken thereon; whereupon the trade was consummated.   It fairly appears that Swank acted in good faith, and he should be protected to the extent of the money that he advanced.

Consequently the judgment of the court below should be modified to the extent that Swank have a lien upon the notes and mortgage for the sum of $960, with interest thereon at the rate of 10 per cent. from the time he advanced the same to Crawford until the same be paid to him, and that, upon paying said amount to Swank, the papers should be returned to Hansen ; and for that purpose the same may be taken from the files of this court, upon the stipulation of counsel ; appellant to recover costs.

HOYT, ANDERS and STILES, JJ., concur.

DUNBAR, C. J. (*dissenting*). — From all the testimony in the case I am not satisfied that the court was not justified

in coming to the conclusion that it did. The trial judge had the witnesses before him, and therefore had better opportunity to distinguish the true testimony from the false than this court has, and, unless it clearly appears that he is wrong, I am not inclined to disturb his findings. I therefore dissent to the modification of the judgment.